374 So.2d 996 (1978)
Janet PITTS, Appellant,
v.
METROPOLITAN DADE COUNTY, Florida, D/B/a Jackson Memorial Hospital, Appellee.
No. 77-1091.
District Court of Appeal of Florida, Third District.
October 17, 1978.
On Rehearing September 6, 1979.
Spence, Payne & Masington, Podhurst, Orseck & Parks and Robert Orseck, and Joel Eaton, Miami, for appellant.
Fowler, White, Burnett, Hurley, Banick & Knight and James L. Hurley, Miami, for appellee.
Before HENDRY and BARKDULL, JJ., and PARKER, J. GWYNN (Ret.), Associate Judge.
PER CURIAM.
Appellant, plaintiff below, appeals from a summary final judgment entered in favor of appellee, defendant below. We affirm.
Appellant, an associate professor at the School of Nursing at the University of Miami, filed a personal injury action against appellee, Dade County, d/b/a Jackson Memorial Hospital, for alleged negligence in the maintenance, operation and supervision of a parking lot at the hospital complex. The action was bottomed upon an incident in which appellant suffered permanent injuries as a result of a daylight robbery committed by a knife wielding assailant in one of the hospital's parking lots. The parking lot was owned by appellee and patrolled by its employee-security guards.
Appellee filed a motion to dismiss the complaint, which was denied, filed its answer, and, subsequent to discovery, moved for summary judgment. A hearing on the motion was held in which legal memoranda were submitted by the parties following oral argument. Thereafter, the trial judge determined that pursuant to Modlin v. City of Miami Beach, 201 So.2d 70 (Fla. 1967) and other authorities, appellant had failed to establish a special duty owed to her by appellee, and entered summary final judgment in favor of appellee.
*997 On appeal, appellant's primary contention is that pursuant to Section 768.28, Florida Statutes (1977), the limited waiver of sovereign immunity statute, the special duty requirement is no longer applicable. As the incident in question occurred after the effective date of the statute, January 1, 1975, appellant argues that facts giving rise to a breach of a general duty is sufficient to sustain a cause of action against appellee. We disagree. The above statutory section waiving sovereign immunity (in limited circumstances) in tort actions for the state, its agencies or subdivisions, is a separate concept from the special duty requirement as expressed in the Modlin decision. While a county may no longer be immune from liability for its tortious conduct, a plaintiff is still saddled with the burden of alleging and proving facts which amount to tortious conduct of a county. As established in Florida, these facts must be such that the negligent breach of duty alleged is something more than the duty owed to the public generally. Cheney v. Dade County, 353 So.2d 623 (Fla. 3d DCA 1977). This showing of special duty has not been abrogated by the waiver of sovereign immunity statute. Cheney v. Dade County, supra. Our view of the record is in accord with the view of the trial judge in that we likewise find no breach of a special duty owed to appellant by appellee from the facts giving rise to the incident. As no breach of a special duty has been shown, as a matter of law, appellee cannot be found negligent. Cheney v. Dade County, supra.
Accordingly, appellee being entitled to summary judgment as a matter of law, the judgment appealed is hereby affirmed.
Affirmed.
HENDRY, Judge, dissenting.
I must respectfully dissent. In my opinion Section 768.28, Florida Statutes (1977) abrogates the necessity of showing a special duty owed by Dade County to appellant. Accordingly, I would reverse the summary judgment for further proceedings.

ON PETITION FOR REHEARING
HENDRY, Judge.
This cause was considered upon the petition for rehearing filed on behalf of the appellant, Janet Pitts.
Since the Supreme Court of Florida has recently determined the scope of the waiver of sovereign immunity resulting from the enactment of Chapter 73-313, as amended by Chapter 74-235, Laws of Florida, Section 768.28, Florida Statutes (1975)[1], in its *998 combined opinion in Commercial Carrier Corporation v. Indian River County and Cheney v. Dade County, 371 So.2d 1010[2] we now address that issue in the cause sub judice and find it incumbent upon us, as a matter of law, to reverse the trial court order appealed from.
Janet Pitts has appealed from a summary final judgment in favor of Dade County d/b/a Jackson Memorial Hospital, contending, inter alia, that pursuant to Section 768.28, the limited waiver of sovereign immunity statute, the "special duty" requirement is no longer applicable.
Appellant, an associate professor at the School of Nursing at the University of Miami, filed a personal injury action against the Defendant, Dade County, for alleged negligence in the maintenance, operation and supervision of a parking lot at the hospital complex. The action was bottomed upon an incident in which appellant suffered permanent injuries as a result of a daylight robbery committed by a knife-wielding assailant in one of the hospital's parking lots. The parking lot was owned by appellee and patrolled by its employees-security guards. Appellee filed a motion to dismiss the complaint, which was denied, filed its answer, and subsequent to discovery, moved for summary judgment, which was granted.
In Commercial Carrier Corporation/Cheney, our Supreme Court, in the form of a survey of law, discussed at length the concept, constructions and interpretations of the federal and various states' sovereign immunity statutes and the numerous bases and holdings dealing with waiver thereof.
The Court, after tracing the history of the Florida precedent-setting cases (both pre- and post- § 768.28)[3] and the specific cases under review, concluded that while the Court was not prepared to embrace the notion that all acts or omissions by governmental authorities will subject them to liability in tort under the statute, it nevertheless determined that too narrow a field of operation to § 768.28 has been ascribed. The opinion sets forth that a plain reading of the statute refutes the proposition that the Legislature intended to codify the rules of sovereign immunity by predicating municipal liability upon "governmental" versus "proprietary" functions and the "special duty" versus the "general duty" dichotomy, when the legislators enacted § 768.28. Further, the court states that municipalities are included within the definition contained in § 768.28(2); for if the Legislature had intended to make the law of municipal sovereign immunity applicable to the state, its agencies and political subdivisions only, there would have been no need to include municipalities within the operation of the waiver of the statute. We note that the Court is adamant in emphasizing that not all governmental functions are exempt from waiver by the wording of the subject statute, and points to the Supreme Court of the United States' holding in Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955),[4] wherein it recites the rationale for refusal to emasculate the sovereign immunity act and its intended purpose.
"The Government in effect reads the statute [§ 2674] as imposing liability in *999 the same manner as if it were a municipal corporation and not as if it were a private person, and it would thus push the courts into the `non-governmental'  `governmental' quagmire that has long plagued the law of municipal corporations. A comparative study of the cases in the forty-eight states will disclose an irreconcilable conflict. More than that, the decisions in each of the states are disharmonious and disclose the inevitable chaos when courts try to apply a rule of law that is inherently unsound. The fact of the matter is that the theory whereby municipalities are made amenable to liability is an endeavor, however awkward and contradictory, to escape from the basic historical doctrine of sovereign immunity. The Federal Tort Claims Act cut the ground from under that doctrine; it is not self-defeating by covertly embedding the casuistries of municipal liability for torts."
Now we turn to the Court's view on the question of whether "discretionary acts" or "judgmental acts" by governmental officials or employees are exempt from operation of the subject Florida statute. Basing its decision on the authority of holdings in some Florida cases,[5] as well as some from other jurisdictions, it was determined that absent an express exception in the waiver statute for discretionary functions, such governmental functions cannot be the subject of traditional tort liability. This is so because it is felt that certain functions of coordinate branches of government may not be subjected to scrutiny by judge or jury as to the wisdom of their performance.[6] Thus, the Court, in order to identify said discretionary functions, has adopted the analysis as discussed in Johnson v. State, 69 Cal.2d 782, 73 Cal. Rptr. 240, 447 P.2d 352 (1968), to distinguish between the "planning" and "operational" levels of decision-making by governmental agencies.[7] Henceforth, we must look to whether the act or omission complained of by the tort claimant is at the "discretionary level" (planning) or at the "operational level" (maintenance) before it can be determined if there is a cause of action. See Ferla v. Metropolitan Dade County, 374 So.2d 64 (Fla. 3d DCA 1979).
Returning to our immediate concern in the appeal before us, the appellant urges that "the police service officers",[8] who were under the control of the County by way of its Public Health Trust and were hired solely to patrol the areas in and about the Jackson Memorial complex (necessarily including the parking lot areas), failed to perform the duty owed her, for which Dade County may be found to be liable. In light of the holding in Commercial Carrier Corporation/Cheney, we believe that the duty of the appellee which was allegedly breached, falls within the category of an "operational level" act or omission. The case is reversed and remanded, with directions to vacate the order of summary judgment and to proceed with the cause.
Reversed and remanded.
NOTES
[1] Chapter 768.28 reads, in pertinent part:

"(1) In accordance with section 13, Article X, state constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act. Actions at law against the state of any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of his office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act.
"(2) As used in this act, `state agencies or subdivisions' include the executive departments, the legislature, the judicial branch, and the independent establishments of the state; counties and municipalities; and corporations primarily acting as instrumentalities or agencies of the state, counties, or municipalities.
"(3) Except for a municipality, the affected agency or subdivision may, at its discretion, request the assistance of the department of insurance in the consideration, adjustment, and settlement of any claim under this act.
"(4) Subject to the provisions of this section, any state agency or subdivision of the state shall have the right of appealing any award, compromise, settlement, or determination to the court of appropriate jurisdiction.
"(5) The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages or interest for the period prior to judgment. Neither the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $50,000 or any claim or judgment, or portions thereof, which when totaled with all other claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence, exceeds the sum of $100,000. However, a judgment or judgments may be claimed and rendered in excess of these amounts and may be settled and paid pursuant to this act up to $50,000 or $100,000, as the case may be, and that portion of the judgment that exceeds these amounts may be reported to the Legislature, but may be paid in part or in whole only by further act of the Legislature. The limitations of liability set forth in this sub-section shall apply to the state and its agencies and subdivisions whether or not the state or its agencies or subdivisions possessed sovereign immunity prior to July 1, 1974."
[2] Which were presented to the court by writ of certiorari from two separate decisions of the appellate court. See, April 19, 1979 opinion, No. 51,462 and No. 53,178, respectively.
[3] See particularly, Kaufman v. City of Tallahassee, 84 Fla. 634, 94 So. 697 (1922); Modlin v. City of Miami Beach, 201 So. 70 (Fla. 1967) and Gordon v. City of West Palm Beach, 321 So.2d 78 (Fla. 4th DCA 1975).
[4] The decision construed the then-current version of the federal act, 28 U.S.C. §§ 1346(b) and 2674 (1951), which was nearly identical to the pertinent language of § 768.28(1) and (5).
[5] Steinhardt v. Town of North Bay Village, 132 So.2d 764 (Fla. 3d DCA 1961) and Wong v. City of Miami, 237 So.2d 132 (Fla. 1970).
[6] See, Lipman v. Brisbane Elementary School District, 55 Cal.2d 224, 11 Cal. Rptr. 97, 359 P.2d 465 (Cal. 1961); Evangelical United Brethren Church v. State, 67 Wash.2d 246, 407 P.2d 440 (Wash. 1965); Johnson v. State, 69 Cal.2d 782, 73 Cal. Rptr. 240, 447 P.2d 352 (1968).
[7] See also, Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) and Weiss v. Fote, 7 N.Y.2d 579, 200 N.Y.S.2d 409, 167 N.E.2d 63 (1960)
[8] They represent the "Securities Services Section" of the Dade County Safety Department; they are not regular police officers but are security guards with special training in facility and industrial security.